# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMEY L. NASTROM, et al.,<br><br>　　　　Plaintiffs,<br><br>　vs.<br><br>JPMORGAN CHASE BANK, N.A., et al.,<br><br>　　　　Defendants. | ) Case No.: 1:11cv01998 DLB<br>)<br>)<br>) ORDER GRANTING DEFENDANTS'<br>) MOTION TO DISMISS FIRST AMENDED<br>) COMPLAINT<br>)<br>) (Doc.  44)<br>)<br>) |

On August 23, 2012, Defendants JPMorgan Chase Bank, N.A., individually and as successor by merger to Chase Home Finance LLC, Mortgage Electronic Registration Systems, Inc., Federal Home Loan Mortgage Corporation and Deutsche National Bank Trust Company ("Defendants") filed the instant motion to dismiss the First Amended Complaint.  Plaintiffs Jamey L. Nastrom and Kim Hewton-Nastrom ("Plaintiffs") failed to file a timely opposition to the motion and therefore were not entitled to be heard in opposition at oral argument.  Local Rule of the United States District Court, Eastern District of California ("Local Rule") 230(c). Accordingly, the Court deemed the matter suitable for decision based upon the amended

complaint, record and briefs on file and vacated the hearing scheduled for September 28, 2012. Local Rule 230(g).

## BACKGROUND

Plaintiffs, originally *pro se*, filed the instant action on November 22, 2011, challenging foreclosure proceedings on certain real property. Defendants JPMorgan Chase Bank, N.A., individually and as successor by merger to Chase Home Finance LLC, JPMorgan Chase Custody Services, Inc., Mortgage Electronic Registration Systems, Inc., and Federal Home Loan Mortgage Corporation filed a motion to dismiss on February 13, 2012. Defendant Deutsche Bank National Trust Company filed a motion to dismiss on March 2, 2012. The Court granted the motions to dismiss and provided Plaintiffs leave to file an amended complaint within sixty (60) days.

On August 6, 2012, Plaintiffs, through counsel, filed a First Amended Complaint ("FAC"). Defendants moved to dismiss the FAC on August 23, 2012. Plaintiffs did not file a timely opposition to the motion.[1]

## FACTUAL ALLEGATIONS IN THE FAC

Plaintiffs are the owners of property located at 103 C. Street in Empire, California. On July 2, 2007, Plaintiffs refinanced a loan with Defendant JPMorgan Chase Bank ("Chase"). Plaintiffs attempted to contact Chase in December 2008, January 2009 and February 2009, and were contacted at the end of March 2009. FAC ¶¶ 19, 29-30.

On April 1, 2009, Plaintiffs contacted Home Owners Assists in Arizona and spoke with Lucia Reyes. Ms. Reyes requested financial information from Plaintiffs over the phone and also requested submission of bank statements, paystubs, profit and loss statements, and tax returns for 2007 and 2008. FAC ¶ 31.

---

[1] By separate order, the Court denied Plaintiffs' ex parte application to file a late opposition. Doc. 54.

On April 3, 2009, Plaintiffs contacted the Specialty Lending Unit in New York and spoke with Angie Jackson. Ms. Jackson indicated that Plaintiffs fit the guidelines for participation in the Home Affordable Modification Program ("HAMP"). Ms. Jackson requested that Plaintiffs submit a hardship letter and other financial documents. Plaintiffs submitted these items to Defendants. FAC ¶¶ 32, 33. On May 14, 2009, Ms. Jackson contacted Plaintiffs and requested additional financial information. Plaintiffs submitted this information to Defendants. FAC ¶ 34.

In July 2009, someone representing Chase contacted Plaintiffs and informed them that their case had been transferred to Texas. Plaintiffs were instructed to resubmit all of their documents. FAC ¶ 35.

On July 9, 2009, Defendants claimed that some paperwork was missing and requested that Plaintiffs complete additional documents for loan modification. When Plaintiffs explained their belief that they had already completed the paperwork, some unknown person representing Chase threatened to close Plaintiffs' file. Plaintiffs were verbally insulted and told to get a job. Plaintiffs stayed up until about 4:00 a.m. to complete and fax the paperwork. FAC ¶¶ 36-37.

On July 10, 2009, Plaintiffs contacted the Texas office and spoke to an unknown supervisor, who stated that not all of the papers had been received. Plaintiffs remained on the phone until it was demonstrated that all documents were received. FAC ¶ 38.

On July 28, 2009, Plaintiffs received a letter from Chase stating that the modification was denied as Plaintiffs' income exceeded the maximum for the HAMP lending program. FAC ¶ 40.

During the next 4-5 months, Plaintiffs inquired into the status of their loan modification and were told that pages were missing. Plaintiffs spoke with Shamikka Wells, who threatened to close Plaintiffs' file. After this conversation, Plaintiffs attempted to recontact Ms. Wells, but the calls were never returned. FAC ¶ 41.

On or about September 25, 2009, Plaintiffs learned about and contacted Emergency Mortgage Relief ("EMR") and spoke to Katy Ochoa. Plaintiffs paid $599 to receive this service.

Plaintiffs completed and returned pertinent financial documents to EMR on October 1, 2009. Plaintiffs attempted to receive updates from EMR, but were not able to reach Ms. Ochoa or any other EMR representatives. Plaintiffs received a letter from EMR on January 20, 2010, explaining that cutbacks affected their staffing and Plaintiffs would be contacted within thirty (30) days for a phone conference with Chase. The conference never occurred. FAC ¶¶ 42-45.

In July 2010, Plaintiffs were contacted by EMR representative Rick McGrath. Mr. McGrath requested updated financial information. On August 6, 2010, Plaintiffs sent the requested information to EMR representative William Papp. Plaintiffs heard nothing from EMR until December 2010, when they contacted Mr. McGrath, who refunded $249.00 of the amount sent to EMR. FAC ¶¶ 47-48.

On October 8, 2010, Plaintiff contacted Rey Serrano at the Chase Homeownership Center in Stockton, California. Serrano told Plaintiffs that they met the criteria for participating in HAMP. Serrano also told Plaintiffs that Chase does not make reductions in principal amounts, but that Chase underwriters would reduce their total monthly payments to an affordable amount. Serrano received required documents from Plaintiffs. For about four months, Plaintiffs received no communications from Serrano or any other representative of Chase, other than to request further financial documentation. FAC ¶¶ 49-53.

On or about June 27, 2011, Plaintiffs contacted the Trejo Law Corporation and spoke with Wendy Wright, a foreclosure defense assistant. Plaintiffs contracted with the Trejo Law Corporation to act on their behalf. FAC ¶ 54.

In July 2011, Plaintiffs could no longer make their full monthly mortgage payments. When Plaintiffs submitted partial payments, Defendant Chase refused to cash these amounts. Plaintiffs ceased making payments. FAC ¶ 55.

On August 3, 2011, Plaintiffs received a letter stating they were ineligible for HAMP because their housing ratio exceeded the maximum allowed for the program. Plaintiffs were informed that they would be given a traditional loan. FAC ¶ 56.

On August 15, 2011, Plaintiff received a packet of documents, including a form for short sale, a Deed in Lieu of Foreclosure and an application for the HAFA program. Plaintiffs did not complete these forms. FAC ¶ 57. Plaintiffs also were notified that they had received a permanent loan modification, which raised their monthly payments by $300.00 to $1,637.15. Additionally, Defendants offered Plaintiffs a loan with payments as high as $2,096.00 per month. Defendants told Plaintiffs that they must sign the forms or Defendants would foreclose on Plaintiffs' home. Plaintiffs noticed that the interest rate on the forms was 7.75%, when it should have been 5.75%. Defendants admitted the rate was incorrect and sent a corrected form to Plaintiffs. FAC ¶¶ 58-60.

On September 19, 2011, Plaintiffs submitted revised financial forms for review. Plaintiffs were informed that they were "good candidates" for a loan modification. FAC ¶ 61.

On October 12, 2011, after communicating with Chase, Ms. Wright contacted Plaintiffs and informed them that their loan was being assigned for review. Ms. Wright again contacted Plaintiffs on November 8, 2011, and stated that she had spoken to Serrano, who said that Plaintiffs would not receive a loan modification as they "make too much money" and the previous loan modification offers were "off the table." Serrano also told Plaintiffs that either liquidation or full reinstatement of $12,693.48 were the only options. FAC ¶ 63. Defendants told Plaintiffs that they must demonstrate a 25% decrease in their income in order to receive another review. FAC ¶ 64.

Plaintiffs have received 184 notices threatening accelerated foreclosure. FAC ¶ 65.

The FAC asserts the following five causes of action: (1) fraud and deceit; (2) civil conspiracy; (3) negligence; (4) promissory estoppel; and (5) violation of California Business and Professions Code §§ 17200 *et seq.*

## DISCUSSION

### A. Legal Standard

"The focus of any Rule 12(b)(6) dismissal . . . is the complaint." *Schneider v. California Dept. of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998). In considering a motion to dismiss for failure to state a claim, the court must accept as true the allegations of the complaint in question, *Hospital Bldg. Co. v. Trustees of Rex Hospital*, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the party opposing the motion, and resolve all doubts in the pleader's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). The federal system is one of notice pleading. *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1126 (9th Cir. 2002).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiffs must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). While factual allegations are accepted as true, legal conclusions are not. *Id.*

### B. Analysis

1. Securitization of Mortgage Debt

Plaintiffs' requested relief is premised on allegations that their loan is securitized. FAC ¶¶ 8-18. Defendants argue this theory fails because (1) Plaintiffs have not demonstrated that the

subject loan was securitized; and (2) securitization does not affect Defendants' ability to initiate non-judicial foreclosure proceedings. The Court agrees.

Plaintiffs have failed to provide factual allegations demonstrating that the subject loan was securitized. Plaintiffs proffer only general allegations regarding the mortgage industry and the securitization process. FAC ¶¶ 1-19. Plaintiffs also have failed to provide any legal basis for why securitization would affect the validity of the loan or Defendants' ability to initiate non-judicial foreclosure proceedings in the event of default. *See e.g., Hafiz v. Greenpoint Mortgage Funding, Inc.*, 652 F.Supp.2d 1039, 1043 (N.D. Cal. 2009) (power of sale pursuant to deed of trust is not lost when the original promissory note is assigned to a trust pool); *Lomely v. JP Morgan Chase Bank, Nat. Ass'n*, 2012 WL 4123403, *3 (N.D. Cal. Sept. 17, 2012) ("allegation that securitization of the Deed of Trust renders it unenforceable is an incorrect proposition under California law, which has rejected the notion that parties lose their interest in a loan when it is securitized or sold and assigned into a pool of trust"); *Ruiz v. SunTrust Mortg., Inc.*, 2012 WL 3028001, *8 (E.D. Cal. Jul. 24, 2012) (securitization of loan does not diminish underlying power of sale upon default). The FAC's securitization allegations fail to support Plaintiffs' claims or their requested relief.

        2.        First Cause of Action for Fraud

Plaintiffs' first cause of action is for fraud and deceit against all Defendants, but only identifies actions by Defendant Chase. Federal Rule of Civil Procedure 9(b) "does not allow a complaint to merely lump multiple defendants together but 'require[s] plaintiffs to differentiate their allegations when suing more than one defendant ... and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764–765 (9th Cir.2007) (quoting *Haskin v. R.J. Reynolds Tobacco Co.*, 995 F.Supp. 1437, 1439 (M.D.Fla.1998)). In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, "identif[y] the role of [each] defendant[ ] in the alleged fraudulent

7

scheme." *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir.1989).   As the FAC's allegations concern only the actions of Defendant Chase and its employees, Plaintiffs fail to state a fraud claim against Defendants Mortgage Electronic Registration Systems, Inc., Federal Home Loan Mortgage Corporation and Deutsche National Bank Trust Company.  The Court recognizes that Plaintiffs allege that all defendants engaged in a civil conspiracy to defraud, but, as discussed more fully below, this assertion fails.

With regard to Defendant Chase and its employees, Plaintiffs' fraud claim is premised on the following:  (1) the representation by Ms. Jackson that Plaintiffs fit the criteria for HAMP (FAC ¶ 32); (2) the representation by Mr. Serrano that Plaintiffs met the criteria for participating in HAMP (FAC ¶ 50); (3) the representation that they were "good candidates" for loan modification (FAC ¶ 61); and (4) a loan from Defendant Chase with an errant interest rate.  FAC ¶¶ 66-71.

To state a claim for fraud, a plaintiff must allege (1) misrepresentation, (2) knowledge of falsity, (3) intent to defraud, (4) justifiable reliance on the misrepresentation, and (5) resulting damage.  *Lazar v. Super. Ct.*, 12 Cal.4th 631, 638 (1996).  With regard to the alleged misrepresentations by Ms. Jackson and Mr. Serrano, Plaintiffs do not sufficiently allege fraud. First, Plaintiffs' allegations do not demonstrate that either Ms. Jackson or Mr. Serrano made false representations that Defendant Chase would approve a permanent loan modification. Further, with regard to the alleged misrepresentations by Mr. Serrano, Plaintiffs do not allege that Mr. Serrano had knowledge of the purported falsity of his statements regarding participation in HAMP.  Second, Plaintiffs do not allege how Ms. Jackson or Mr. Serrano intended to defraud them by having Plaintiffs apply for HAMP.  Third, Plaintiffs fail to demonstrate that they suffered any resulting damage from relying on the alleged misrepresentations.  Plaintiffs were obligated to make payments on their original loan and Defendant Chase was not required to offer them a loan modification.  Moreover, fraud claims addressing any alleged failure to modify

Plaintiffs' loan sound in breach of contract rather than fraud. *See Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1176 (2nd Cir.1993) (failure to carry out a promise "does not constitute fraud unless, when the promise was made, the defendant secretly intended not to perform or knew that he could not perform").

With regard to the errant interest rate by Defendant Chase, Plaintiffs' claim of fraud against a corporate defendant fails. In a fraud action against a corporation, a plaintiff must "allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written." *Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal.App.4th 153, 157, 2 Cal.Rptr.2d 861 (1991). Plaintiffs do not make such allegations here. Moreover, Plaintiffs cannot establish that they relied on Defendant Chase's representations about the errant loan rate. Plaintiffs admit that they recognized the error and that Defendant Chase made the correction. FAC ¶ 60.

3. Second Cause of Action for Civil Conspiracy

In their second cause of action, Plaintiffs allege that Defendants conspired to defraud and victimize Plaintiffs by making false statements and false promises regarding loan modifications. FAC ¶¶ 73-74.

"A conspiracy is not an independent cause of action, but is instead 'a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration.'" *Davenport v. Litton Loan Servicing, LP*, 725 F.Supp.2d 862, 881 (N.D. Cal. 2010) (quoting *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal.4th 503, 510–11, 28 Cal.Rptr.2d 475, 869 P.2d 454 (1994)). "Liability for civil conspiracy generally requires three elements: (1) formation of a conspiracy (an agreement to commit wrongful acts); (2) operation of a conspiracy (commission of the wrongful acts); and (3) damage resulting from operation of a conspiracy." *Id.* "A civil conspiracy is therefore activated by the commission of an underlying wrongful act." *Id.*

Plaintiffs do not provide sufficient factual support that Defendants engaged in a conspiracy. Indeed, Plaintiffs do not allege specific actions on the part of each defendant to establish a civil conspiracy.[2] Plaintiffs make only generalized, conclusory allegations that Defendants "conspired and agreed to implement a scheme to defraud and victimize Plaintiffs through fraud." FAC ¶ 73. Conclusions are not enough and thus Plaintiffs' purported conspiracy claim fails.

4.      Third Cause of Action for Negligence

Plaintiffs assert a negligence cause of action and allege that Defendants, through their employees, "owed a duty of reasonable care to Plaintiffs as their purported mortgage lender" regarding "for what loan modifications Plaintiffs properly qualified." FAC ¶¶ 83-84, 87-88. Defendants contend that this claim fails because (1) Plaintiffs' allegations concerning Chase employee Angie Jackson are time-barred and (2) Plaintiffs fail to establish that Defendants owed them a duty of care.

Regardless of whether the allegations involving employee Angie Jackson are time barred, the claim fails in its entirety because Plaintiffs have not alleged sufficient facts to support a negligence cause of action. "Under California law, the elements of a claim for negligence are (a) a legal duty to use due care; (b) breach of such legal duty; and (c) the breach as the proximate or legal cause of the resulting injury." *Walters v. Fidelity Mortg. of CA*, 730 F.Supp.2d 1185, 1205-06 (E.D. Cal. 2010) (internal quotations and citations omitted). "The existence of a duty of care owed by a defendant to a plaintiff is a prerequisite to establishing a claim for negligence." *Nymark v. Heart Fed. Savings & Loan Assn.*, 231 Cal.App.3d 1089, 1095, 283 Cal.Rptr. 53 91991).

---

[2] Although Plaintiffs named multiple defendants, they appear to attribute alleged wrongdoing only to Defendant Chase. The failure to identify any alleged actions by the remaining defendants further undermines Plaintiffs' purported conspiracy claim.

Generally, "a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Nymark*, 231 Cal.App.3d at 1096, 293 Cal.Rptr. 53. "Liability to a borrower for negligence arises only when the lender actively participates in the financed enterprise beyond the domain of the usual money lender." *Id.* In California, lenders do not have a statutory duty to agree to a mortgage loan modification. *Hamilton v. Greenwich Investors XXVI, LLC,* 195 Cal.App.4th 1602, 1617, 126 Cal.Rptr.3d 174 (2011); *see also Sullivan v. JP Morgan Chase Bank, NA,* 725 F.Supp.2d 1087, 1094 (E.D. Cal. 2010) (allegations that a lender has misrepresented that loan modifications would be made are insufficient to form the basis of a negligence claim).

In this case, Plaintiffs allege that certain Chase employees misrepresented that Plaintiffs qualified for loan modification opportunities with Chase.[3] These allegations are insufficient to state a negligence claim because Defendant Chase had no duty to provide any loan modification. Plaintiffs also fail to allege facts to establish that a duty of care existed between Plaintiffs and Chase or to establish that Chase exceeded the scope of its conventional role as a mere lender of money. Furthermore, according to Plaintiffs' allegations, Defendant Chase not only offered Plaintiffs a traditional loan, but also offered Plaintiffs a loan modification.

5. Fourth Cause of Action for Promissory Estoppel

Plaintiffs assert a cause of action for promissory estoppel based on allegations that Defendant Chase's employees stated that Plaintiffs met the criteria and/or fit the guidelines for participating in HAMP. FAC ¶¶ 93, 95. Defendants contend that this cause of action fails because (1) Plaintiffs' allegations concerning Chase employee Jackson are barred by the statute of limitations, (2) Plaintiffs' claim is barred by the statute of frauds, and (3) Plaintiffs do not sufficiently plead damages.

---

[3] Plaintiffs fail to assert that any of the remaining named defendants (or their employees) made alleged misrepresentations. Accordingly, Plaintiffs' negligence claim fails as to these defendants.

Under California law, the elements of promissory estoppel are as follows: (1) a promise that is clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) the reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by this reliance. *Laks v. Coast Fed. Sav. & Loan Assn.*, 60 Cal.App.3d 885, 890, 131 Cal.Rptr. 836 (1976).

Here, Plaintiffs fails to allege facts to show a "clear and unambiguous" promise, "reasonable and foreseeable" reliance or an injury. At most, Defendant Chase's employees, Ms. Jackson and Mr. Serrano, stated that Plaintiffs met the guidelines or criteria for a loan modification under HAMP. There is no clear promise that Defendant Chase would approve or offer such a loan modification. Moreover, the allegations demonstrate that Plaintiffs were in fact offered a loan modification with which they disagreed. Plaintiffs also fail to allege facts of an injury as there is no assertion that Defendants have foreclosed on their home.

Insofar as Plaintiffs allege that Mr. Serrano told them that Defendant Chase underwriters would reduce their total monthly payments to an affordable amount, this statement is subject to the statute of frauds. Absent a written agreement to modify the loan, any claim based upon an oral contract to modify the loan is barred by the statute of frauds. *See Secrest v. Sec. Nat'l Mortg. Loan Trust 2002-2*, 167 Cal.App.4th 544, 552, 84 Cal.Rptr.3d 275 (2008).

6.   Fifth Cause of Action for Violation of California Business and Professions Code Section 17200 *et seq.* ("Unfair Competition Law" or "UCL").

Plaintiffs assert a UCL violation for unlawful, unfair and fraudulent business practices. Plaintiffs further allege that Defendants misapplied or made an error in crediting Plaintiffs' mortgage information and Defendants must disclose information regarding their account. Defendants argue that Plaintiffs' claim fails because: (1) Plaintiffs lack standing to bring a UCL claim and (2) Plaintiffs fail to allege that Defendants engaged in any unlawful, unfair and fraudulent business practices. The Court finds the first argument dispositive.

"[A] plaintiff must have suffered an 'injury in fact and have 'lost money or property as a result of [the] unfair competition' to have standing to pursue either an individual or a representative claim under the California unfair competition law." *Hall v. Time, Inc.*, 158 Cal.App.4th 847, 849, 70 Cal.Rptr.3d 466 (2008); *Plastino v. Wells Fargo Bank*, __ F.Supp.2d __, 2012 WL 2061515, *6 (N.D. Cal. Jun. 7, 2012); *Jensen v. Quality Loan Service Corp.*, 702 F.Supp.2d 1183, 1199 (E.D. Cal. 2010). In the instant case, Plaintiffs fail to allege loss of money or property due to Defendants' alleged conduct. Although Plaintiffs' cause of action includes an allegation that they suffered damages and injuries, Plaintiffs do not identify specifics beyond the costs of legal services voluntarily incurred. FAC ¶ 109. Based on their failure to allege any loss of money or property, Plaintiffs lack standing to assert a UCL claim.

**C.    Leave to Amend**

Defendants request that the FAC be dismissed without leave to amend. This request is GRANTED. Plaintiffs have been unable to cure the deficiencies in their complaint and there is no indication that their pleading could be cured by allegation of other facts. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) ("in dismissing for failure to state a claim under Rule 12(b)(6), a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts").

**CONCLUSION AND ORDER**

For the reasons stated, Defendants' motion to dismiss the FAC without leave to amend is GRANTED.

IT IS SO ORDERED.

Dated:   **November 13, 2012**            /s/ Dennis L. Beck
                                                                 UNITED STATES MAGISTRATE JUDGE